[L. A. No. 2997. Department One.—February 11, 1913.]

## GEORGE W. BORGWARDT et al., Respondents, v. McKITTRICK OIL COMPANY, Appellant.

MINERAL LOCATION—PLACER CLAIM—LOCATION PERFECTED BY DISCOVERY —ASSESSMENT WORK—ACTUAL POSSESSION.—An actual discovery of minerals in paying quantities on a placer mining location on the public domain of the United States subject to mineral location, perfects the location, obviates the necessity of any further work thereon except the assessment work required annually on a claim after discovery and before patent, and dispenses with the necessity of further actual possession.

Id.—Development of Several Locations Through Agency of Corporation.—No statute, rule, or policy relating to the disposition of mineral lands, and limiting the quantity of placer mineral land which may be located by one person, forbids a number of persons, who had made *bona fide* locations of placer mining claims in their individual names, the aggregate area of which was within the limit of the amount allowed them by law, from conveying their respective claims to a corporation, organized by them as an agency by means of which their joint interests might be regulated and handled, and in which they became stockholders in equal shares.

Id.—Actual Discovery—Assessment Work—Forfeiture.—Until a sufficient actual discovery of mineral is made on a placer mining claim, a location is not perfected, and no question of the doing of annual assessment work is involved. It is only after such discovery, when actual possession is no longer necessary to protect the location against subsequent locators, that annual assessment work is essential to prevent a forfeiture.

Id.—Rights of Locator Prior to Discovery—Oil Claim—Possession—Prosecution of Discovery Work.—The locator of an oil claim, after the posting of notice of location, etc., acquires no vested right which Congress is obliged to recognize, until the inchoate location is perfected by discovery. But where his location is made in good faith, he has the right, as against third persons, which is transferable, to be protected against all forms of forceable, fraudulent, surreptitious, or clandestine entries and intrusions upon his possession, so long as he remains in possession and with due diligence prosecutes his work toward a discovery. While such a condition continues, no one without his consent can make the actual entry of the land essential to legally initiate a new location.

Id.—Necessity of Actual Possession—Diligent Prosecution of Discovery Work.—Actual possession of the land by such locator, coupled with continued diligent prosecution of discovery work, with the expenditure of whatever money may be necessary to the end in view, are essential to his protection, and it is only one so actually possessed and so engaged in the diligent prosecution of the work of discovery, who is protected, by reason of his attempted location, against an entry by another.

Id.—Insufficient Evidence of Discovery Work—Placing Men in Charge of Claim—Efforts to Hire Persons to do Work.—In an action to quiet title to oil lands claimed by the respective parties under different locations, a finding that the plaintiffs were engaged in the prosecution of discovery work at a time when the defendant entered the land and .commenced its own discovery work, is not sustained by evidence merely to the effect that the plaintiffs had placed men in a cabin on an adjoining tract of land, with directions simply to watch their location and walk over it once or twice a day, and the mere fact that the plaintiffs, during the inter-

val between their location and the entry of the defendant, were engaged in negotiations with other persons as to what they would charge for doing the work of discovery, or were making an effort to find someone who would do such work at a satisfactory price, is insufficient to constitute a diligent prosecution of the work of discovery.

ID.—REASONABLE TIME TO COMMENCE DISCOVERY WORK NOT ALLOWED. The attempting locator is protected in his possession only while he may fairly be held to be actually engaged in such work as may reasonably be held to be discovery work. He is not protected in his possession without commencing such work for a reasonable time after making his location.

ID.—LOCATOR PRIOR TO DISCOVERY MAY COMMENCE WORK AT ANY TIME BEFORE RIGHTS OF OTHERS HAVE ATTACHED.—A prior locator of a placer mining claim, the location of which had never been perfected by discovery, and which he had not voluntarily abandoned, did not forfeit his location by the mere failure to prosecute development work, and had the right to subsequently enter into possession of the land and do discovery work thereon at any time he could do so without transgressing any right obtained by another.

ID.—SUBSEQUENT LOCATION—DISCOVERY WORK FIRST INITIATED BY PRIOR LOCATOR.—Such a prior locator, by again going into possession and commencing discovery work, did not violate any right of a subsequent locator, who was not at the time in the actual possession of the land, engaged in the diligent prosecution of discovery work thereon.

ID.—EVIDENCE OF DISCOVERY OF OIL—PASSING THROUGH OIL SANDS TO REACH LOWER DEPTHS—WELL RENDERED USELESS BY FLOW OF WATER.—The locator of an oil claim, immediately following his location, proceeded with the work of development, with the result that a well was drilled to the depth of about one thousand one hundred feet. At a depth of some seven hundred and seventy-five feet, twenty-five feet of rich oil sands were discovered, capable of producing forty barrels of oil per day. No oil was in fact produced, the locator endeavoring to pass through and reach a greater production at a lower depth. Finally an immense flow of artesian water was struck, which prevented further operations in that well. *Held,* that a sufficient discovery of oil was made to perfect the location.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

J. W. P. Laird, and F. E. Borton, for Appellant.

George E. Whitaker, Charles G. Lamberson, and Lamberson & Lamberson, for Respondents.

ANGELLOTTI, J.—This is an appeal from a judgment given in an action commenced June 1, 1908, to quiet plaintiffs' title to the northeast quarter of section 12, township 30 south, range 21 east, Mt. Diablo base and meridian, containing one hundred and sixty acres, which is valuable for petroleum oil. Plaintiffs claim under an attempted United States placer mining location, initiated by the posting by them of notice of location on the ground on May 26, 1908, while defendant claims under two locations initiated on September 19, 1899, one including the north one-half of said northeast quarter, with lots 1 and 2 in the northwest quarter of the same section, and the other including the south one-half of said northeast one-quarter, with lots 3, 4, 5, and 6 in the southeast quarter of the same section.

The findings of the trial court, which are in full accord with the allegations of the complaint of plaintiffs, are to the following effect: Plaintiffs, who were then citizens of the United States over the age of twenty-one years, on May 26, 1908, filed a mineral location covering said quarter section under and pursuant to the provisions of chapter VI, title 32, Revised Statutes of the United States, by posting a notice in due form thereon where it was easily discernible, and performing the other acts essential to the initiation of a location. All said land was at said time a part of the public domain of the United States, and was unappropriated, open, vacant, and unoccupied land, subject to location and entry by citizens of the United States. Immediately following the making of such location, they entered upon the occupancy and possession thereof, and continued in the exclusive possession thereof up to May 29, 1908, engaged in the development of the same for the oils, gypsum, and other minerals contained therein. During the night of May 29, 1908, while plaintiffs were in such possession, the defendant without their consent entered in and upon the surface lines of said claim, announcing its intention to drill for mineral oils contained therein, and have ever since proceeded and are now proceeding "to put into effect the said announcement and the preliminary work of drilling for said mineral oils." The court further found that

at the time of plaintiffs' location the land was not held by the defendant under or by virtue of any mineral location whatever, and the defendant was not the owner of or entitled to the possession of or in the occupancy or possession of said land or any part thereof, or actively or in good faith engaged in the work of prosecuting the development of said land or any part thereof for oil. It further found that any attempted location which defendant had made upon said land had, prior to May 26, 1908, become forfeited by reason of the failure of defendant or its predecessors in interest to do or perform the assessment work required by law to be performed upon said land during the year 1907, and that defendant was not thereafter, or on August 18, 1908, in the possession or occupancy of the land under any mineral location whatever. It further found that plaintiffs within a reasonable time after their location, commenced in good faith the work of developing the land for the mineral oil contained therein and prosecuted the same with reasonable diligence until the discovery of oil in a well drilled by the lessees of plaintiffs.

Judgment was given that subject only to the paramount title of the United States, the plaintiffs are the sole owners of said land, and enjoining defendant from asserting any claim thereto. As we have said, this is an appeal by defendant from such judgment.

It is claimed that the findings are in certain material respects without support from the evidence.

Except in regard to the matter of assessment work for the year 1907, there is practically no conflict in the evidence. Substantially, such evidence is as follows: As we have said, defendant claims under two locations initiated on September 19, 1899, one including the north half of said northeast quarter, with lots 1 and 2 in the northwest quarter of the same section, and the other including the south half of said northeast quarter, with lots 3, 4, 5, and 6 in the southeast quarter of the same section. Notices of location were posted on September 19, 1899, on these two claims on behalf of the requisite number of persons, who at such time intended to work through the agency of a corporation in which they were to hold the stock in equal shares, and who subsequently, on December 2, 1899, conveyed their respective interests to defendant corporation. The work of development was imme-

diately proceeded with on lot 5 in the southeast quarter of the section, with the result that a well was drilled to the depth of about one thousand one hundred feet. At a depth of some seven hundred and seventy-five feet, twenty-five feet of rich oil sands were discovered, capable of producing, it is claimed, forty barrels of oil per day. No oil was in fact produced, defendant endeavoring to pass through and reach a greater production at a lower depth. Finally an immense flow of artesian water was struck, which effectually prevented further operations in that well. This was in the latter part of 1899 or the early part of 1900. It may be conceded that from such time until May 28, 1908, there was no such continuous work as would warrant a conclusion that defendant was continuously and diligently prosecuting any discovery work on either location, and that it was not doing so on May 26, 1908. It claims that a sufficient discovery was shown on the southerly location by what we have already stated, which perfected that location, obviated the necessity of any further work except the one hundred dollars assessment work required annually on a claim after discovery and before patent, and dispensed with the necessity of further actual possession, all of which results do follow an actual discovery. Defendant owned other claims, adjoining or cornering on these locations, on some of which it was prosecuting work. In April, 1908, defendant's board of directors voted to order the timbers for a rig to drill a well on the northerly location. At this time, Mr. Davis, who located the alleged claim, as agent of plaintiffs, was the foreman of defendant, as well as a stockholder and director therein. Early in May he severed his relations with defendant. On May 23, 1908, defendant commenced the overhauling and repair of a water pipe-line to be used in drilling on said northerly location. On May 26, 1908, Davis went upon the northeast quarter of section 12 to locate the same for plaintiffs. At that time no one was in actual physical possession of any part thereof. There was an old cabin on the northerly one-half of said northeast quarter, and another old cabin on the southeast quarter of said section, some little distance outside of the lines of the land attempted to be located by him, but within the lines of defendant's southerly location. Both of these cabins had been erected by defendant. Davis posted his notice of location, and looked at the bound-

aries already marked on the ground. On May 27, 1908, he
departed for Bakersfield, leaving a man named Garner in the
cabin on the southeast quarter of the section, with directions
to get two or three other men to watch the claim, and stay
on the ground. During the evening of May 28, 1908, de-
fendant brought to the north half of said northeast quarter
in wagons certain timber for the construction of a rig to bore
a well, and deposited the same thereon, following this with
rig lumber on the next day. Davis returned to the land on
May 29, with a surveyor to run the lines, and found the timber
that had already been left there by defendant, and also found
a man occupying the cabin thereon, who had been left in
possession by defendant. On May 30th or 31st he returned
again, staying overnight, and sleeping in the cabin on the
north half of the northeast quarter with the man who occu-
pied the same for defendant. He returned to Bakersfield the
next day, and on June 1, 1908, this action was commenced.
The only actual possession on the part of plaintiffs up to this
time was such as can be held to have existed by reason of the
occupancy by Garner and three men whom he employed, of
the cabin on the southeast quarter of the section, and the fact
that such men were there to watch the claim, and walked over
the ground occasionally. The only alleged prosecution of any
discovery work on the part of plaintiffs up to this time was
that Mr. Davis, some ten days before May 26, 1908, had been
negotiating with certain parties as to the amount that they
would charge to place a drilling rig on this land, or as he
put it "figuring" with them as to what they would charge.
This resulted in nothing in the way of any arrangement, and
it was as late as the middle of July, 1908, before any arrange-
ment was made with anybody to procure a drilling rig. From
the time that defendant commenced to move timber upon the
north half of the northeast quarter on May 28, 1908, it was
never out of actual possession thereof, and continued to dili-
gently prosecute discovery work, ultimately, some time in
the fall of 1908, finishing a well capable of producing oil in
paying quantities. Some time subsequent to the commence-
ment of the action, and in the early part of June, 1908, while
defendant was enjoying actual possession of the land, engaged
in prosecuting discovery work, Davis constructed a small
cabin thereon, which was thereafter occupied by plaintiffs'

agents. About the middle of July plaintiffs commenced to place timber for a boring rig upon the land. They completed a rig there about July 22d or 23d, "spudded in" on August 31st and thenceforth prosecuted their discovery work with diligence, finally, some time after defendant's discovery, finishing a well.

We see no reason to doubt the validity of the locations of defendant's predecessors, made in the year 1899. The sixteen locators located the claims solely for their own individual benefit, and not as mere agents for the benefit of some other person or of some corporation in which they had no interest. The defendant corporation to which it was proposed to transfer the claims was to be one in which they were to be the sole stockholders, each to own one-sixteenth of the stock. As said in appellant's brief: "This is no case of dummy locators, lending their names to any person, or any corporation for the purpose of permitting it to acquire lands. This is a case of sixteen men locating, in apparent good faith, lands within the limit of the amount allowed to them, and adopting a corporate management as an appropriate means of regulating and handling their joint interests, and each retaining through the agency of the corporation, the exact interest in the land which he acquired under his location." The authorities, cited by respondents in this regard, have no application to such a situation, but refer to cases where a location is made by so-called "dummy locators," persons who simply loan their names as locators and act simply as the agents or employees of some person or corporation to whom they are to transfer their interest. Our own case of *Mitchell* v. *Cline,* 84 Cal. 409, [24 Pac. 164], cited by respondents, is one of such cases. There, as said by the court, three of the locators of one claim and five of another were "sham locators," not pretending to have any interest in the claim. "They merely permitted their names to be used as locators to enable their friends to obtain possession of and patent for more mineral land than they were entitled to by law, and they executed conveyances to such friends without any valuable or lawful consideration therefor." This was held to be contrary to the policy and object of the United States law limiting the quantity of placer mineral land which may be located by one person. In *Cook* v. *Klonos,* 164 Fed. 529, [90 C. C. A. 403], the

question, as stated by the court, was "whether an individual can, by the use of the names of his friends, relatives, or employees as dummies, locate for his own benefit a greater area of mining ground than that allowed by law." No reason is advanced or can be conceived why such a practice as was adopted in the case at bar can be held to be violative of any statute, rule, or policy relating to the disposition of mineral lands, and we know of no ruling to the effect that it is forbidden. (See in this connection Lindley on Mines, sec. 226.)

There was never, prior to the latter part of the year 1908, any discovery of oil or other mineral by defendant on the northerly location, sufficient to perfect the location. We do not think that the evidence was of such a nature as to establish any voluntary abandonment of this location by defendant, and we do not understand that the conclusion of the lower court was in any way based on the theory of an abandonment of the claim. Its express finding on the subject is not one of abandonment, but that any attempted location which defendant had made became forfeited by reason of the failure of defendant or its predecessors in interest to do or perform the assessment work required by law to be performed upon said land during the year 1907. Until a sufficient actual discovery of mineral is made on such a claim, a location is not perfected, and no question of the doing of annual assessment work is involved. It is only after such discovery, when actual possession is no longer necessary to protect the location against subsequent locators, that annual assessment work is essential to prevent a forfeiture.

The rights of the person or persons endeavoring to locate an oil claim, after the posting of notice, etc., are well settled by the decisions. Until the inchoate location is perfected by discovery, the locator has no vested right which Congress is obliged to recognize. But where his location is made in good faith, he has the right, as against third persons, which is transferable, "to be protected against all forms of forceable, fraudulent, surreptitious, or clandestine entries and intrusions, upon his possession," so long as he "remains in possession and with due diligence, prosecutes his work toward a discovery." (*Miller* v. *Chrisman,* 140 Cal. 440, 447, [98 Am. St. Rep. 63, 73 Pac. 1084]; *Weed* v. *Snook,* 144 Cal. 439, [77 Pac. 1023].) As long as such a condition continues, no one with-

out his consent can make the actual entry of the land essential to legally initiate a new location. But actual possession of the land coupled with continued diligent prosecution of discovery work are essential to his protection. "What the attempting locator has is the right to *continue* in possession, undisturbed by any form of hostile or clandestine entry, while he is diligently prosecuting his work to a discovery." (*McLemore* v. *Express Oil Co.,* 158 Cal. 559, [139 Am. St. Rep. 147, 112 Pac. 59].) "Where the alleged locator has not made a discovery and has not retained possession for the purpose of prosecuting work looking to a discovery, his mere posting of notice and marking of boundaries upon the ground will not serve to exclude others who may peaceably enter upon the land which he is not actually working or occupying." (*New England etc. Oil Co.* v. *Congdon,* 152 Cal. 211, 214, [92 Pac. 180, 181].) The case of *Belk* v. *Meagher,* 104 U. S. 279, [26 L. Ed. 735], does not hold otherwise. The location there involved was one perfected by discovery, or rather one where discovery preceded the posting of notice of location, and as we have said, actual possession is not essential after the location has been perfected by discovery. The requirement of diligent prosecution of the work was described in *McLemore* v. *Express Oil Co.,* 158 Cal. 559, [139 Am. St. Rep. 147, 112 Pac. 59], as follows: "This diligent prosecution of the work of discovery does not mean the doing of assessment work. It does not mean the pursuit of capital to prosecute the work. It does not mean any attempted holding, by cabin, lumber pile, or unused derrick. It means the diligent, continuous prosecution of the work, with the expenditure of whatever money may be necessary to the end in view." It is only one so actually possessed and so engaged in the diligent prosecution of the work of discovery, who is thus protected, by reason of his attempted location, against an entry by another.

As we have intimated, in view of what he have said, the situation was not such on May 26, 1908, that defendant could complain of an entry then made by another in good faith on the land embraced in its northerly location. Apparently it was not then in actual possession of any part thereof, or engaged in the diligent prosecution of discovery work thereon. Accordingly, plaintiffs were then entitled to locate the same

as an oil claim. They were entitled to go into actual posses-
sion thereof, post their notice of location, and continue in ac-
tual possession as long as they were diligently prosecuting
discovery work thereon for the purpose of perfecting their
location by discovery, protected against any re-entry on the
part of defendant. But, as we have seen, their mere entry
into possession and posting of a notice of location, without
continuance of actual possession *and* continued diligent prose-
cution of discovery work, would not avail them. These things
would serve only to protect them in their actual possession
while they were engaged in diligently prosecuting discovery
work.

As we have seen the trial court found in favor of plain-
tiffs upon the matter of actual possession and diligent prose-
cution of discovery work at the time defendant re-entered
the land, and commenced its own discovery work thereon.
This was one of the allegations of paragraph 5 of the com-
plaint, all the allegations of which were found to be true
by the trial court. The finding is a material one, as is ap-
parent from what we have said.

As to the matter of possession, it appears without conflict
that there was absolutely no one in actual occupancy of any
part of the land embraced in plaintiffs' attempted location
from the time of the posting of plaintiffs' notice to the time
of defendant's re-entry, or indeed until some time during
the following month, when Davis constructed a cabin thereon.
The utmost effect of plaintiffs' evidence in this behalf was
that men had been placed in a cabin on an adjoining tract
of land, with directions simply to watch this land and walk
over it once or twice a day. Whatever may be said as to this
as being capable of sustaining a finding of actual possession,
it is clear that the evidence is not sufficient to support the
finding substantially to the effect that plaintiffs were engaged
in the prosecution of discovery work at any time prior to the
entry by defendant and the commencement of its own dis-
covery work, or indeed to support a conclusion that they were
so engaged at any time prior to the middle of July, long
after the commencement of this action. Clearly, the mere
"figuring" with other persons by the locator as to what they
will charge for the doing of such work, or the making of an
effort to find some one who will do such work at a price satis-

factory to the attempting locator, which is the utmost plaintiffs' evidence tends to show was done, cannot be held to constitute a diligent prosecution of the work of discovery, any more than the pursuit of capital to prosecute such work can be held to constitute such diligent prosecution. (See *McLemore v. Express Oil Co.*, 158 Cal. 559, [139 Am. St. Rep. 147, 112 Pac. 59].) Under the rule established by the decisions, the locator is protected in his possession only when engaged in the diligent prosecution of actual work for a discovery, and the commencement and continuance of such work are as essential when he complains of interference with his possession, as is the posting of his notice of location. We do not mean to hold that such diligent prosecution of the work may not include such actual preparation for the same as the bringing to the claim of the materials necessary therefor. We have no such situation presented by the evidence here, and need not determine exactly what will constitute the diligent prosecution of discovery work. Here we have nothing more than an indefinite "figuring" with other persons as to what they will charge for doing the work, if employed to do so, which by no stretch can be held to constitute a part of the actual prosecution of the work of discovery. It is urged that an attempting locator is protected in his possession without commencing such work, provided he does not allow an "unreasonable time" to lapse without making such a commencement, and this appears to have been the theory of the learned judge of the trial court as evidenced by one of his findings, where it is declared that plaintiffs "within a reasonable time thereafter commenced in good faith the work of developing the said land," etc. Such commencement, as we have seen, was long after defendant's re-entry and long after the commencement of this action. The rule declared by the decisions does not so provide. The attempting locator's possession is protected only while he may fairly be held to be actually engaged in such work as may reasonably be held to be discovery work.

It would seem to follow that as to defendant's northerly location, plaintiffs were not protected in their alleged possession at the time of defendant's re-entry on May 28, 1908, by reason of the posting of their notice of location. As we have said, it cannot be fairly held that plaintiffs had then com-

menced any work which by any stretch can be called discovery work. Until they had made such a commencement, the claim was as freely open to defendant under its location of September, 1899, as it would have been had no notice of location been posted by plaintiff. Learned counsel for plaintiffs are in error in claiming that the location of defendant's predecessors had been *forfeited*. Such would have been the situation if a discovery had been made on the claim and the location thus perfected, and there had been a subsequent failure to do the annual assessment work expressly made necessary by statute to avoid a forfeiture, coupled with a subsequent valid location by an adverse claimant. Defendant's northerly location had never been perfected by discovery. In the absence of a voluntary abandonment of all claims thereunder, it had the right to enter into possession of the land and do discovery work thereon at any time that it could do so without transgressing any right obtained by another. The alleged occupancy of plaintiffs was not of such a nature as to destroy or affect this right of defendant, and defendant in going again into possession and commencing discovery work on the land did not violate any right of plaintiffs.

In view of what we have said, it is apparent that the judgment must be reversed. A material finding essential to plaintiffs' right to prevail as to the land embraced in defendant's northerly location is not sufficiently supported by the evidence.

We have not considered what the effect on plaintiffs' claim as to the southerly half of said northeast quarter will be, if they finally fail to substantiate their claim as to the northerly half thereof, and as that question has not been argued, we shall not attempt to determine it here. As we understand the record, all of plaintiffs' development work has been done on the northerly half of said northeast quarter.

It is proper to say for the purpose of a new trial, that we see no good reason for doubting that the evidence was such as to support a conclusion that there was a sufficient discovery by defendant in 1899 or 1900 to perfect its location in so far as its southerly claim is concerned. Such would appear from the findings of the trial court to have been the view of the learned trial judge. The material question, then, in regard to the validity of such location at the time of plaintiffs' entry,

would appear to be whether defendant subsequent to such discovery had failed to do the necessary annual assessment work required by the United States statutes.

There is no other matter suggested in the briefs that appears to require discussion in this opinion.

The judgment is reversed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.