## UNITED STATES v. STANDARD OIL CO. et al.

(District Court, S. D. California, N. D. May 14, 1920.)

### No. A-49.

1. **Mines and minerals ⊖=36—Pickett Act for withdrawal of oil lands is remedial.**

   The Pickett Act (Comp. St. §§ 4523–4525), authorizing the withdrawal of oil-bearing lands from entry, but saving the rights of parties in diligent prosecution of work leading to the discovery of oil or gas, is a remedial statute, and should be construed to effectuate its purpose.

2. **Mines and minerals ⊖=38(20)—Evidence held to show development of oil claim in good faith.**

   In a suit to restrain waste and depletion of oil on a tract withdrawn from entry under the Pickett Act (Comp. St. §§ 4523–4525), evidence *held* to show that the defendant was in good faith developing the group of several contiguous claims owned by it as a group or unity, in a practical, businesslike, and economical way.

3. **Mines and minerals ⊖=36—Development of one claim for benefit of group is sufficient.**

   The development by the owner of a group of oil claims on one or more of the claims, which would be for the beneficial and economical development of the entire group, is sufficient to protect the rights of the claimant under the Pickett Act (Comp. St. §§ 4523–4525) to one claim of the group, although no work was being done on that particular claim.

4. **Mines and minerals ⊖=36—Contract reserving right to delay drilling held not to negative development in good faith.**

   The fact that an oil claimant, under its contract with the original locator of a group of claims, reserved the right to delay drilling on one claim until oil had been discovered on another, does not defeat its rights under the saving clause of the Pickett Act (Comp. St. §§ 4523–4525), where it did develop all claims in good faith.

In Equity. Suit by the United States against the Standard Oil Company and others to restrain waste and depletion of oil. Bill dismissed.

Henry F. May and Charles D. Hamel, Sp. Asst. U. S. Attys., both of San Francisco, Cal.

Oscar Sutro, of San Francisco, Cal., for defendant Standard Oil Co.

George E. Whitaker, of Bakersfield, Cal., for defendants Squires Security Trust Co., of Bakersfield, Syndicate Petroleum Co., Sill, Atkinson, Law, Doll, Whitaker, Gordon, Kersey Dennis, O'Brien, and Gibson.

---

⊖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

U. T. Clotfelter, of Los Angeles, Cal., for defendant Estate of E. E. Jones.

Haven & Athearn, of San Francisco, Cal., for defendant Pyramid Oil Co.

BEAN, District Judge (sitting by special assignment). This is a suit to restrain waste and depletion of the oil contents of the northwest quarter of section 28, township 32 south, range 24 east, Mt. Diablo meridian, Cal., and to enjoin trespass thereon. The property is oil-bearing and is included in the area described in the presidential withdrawal order of September 27, 1909. No discovery had been made at the date of withdrawal.

[1] The defendants, however, were bona fide occupants or claimants of the property, and, as it is contended, were in diligent prosecution of work leading to discovery thereon at the time of the withdrawal, and therefore protected by the saving clause of the Pickett Act. 36 Stat. 847 (Comp. St. §§ 4523–4525). This is a remedial statute, and should be construed to effectuate its purpose. U. S. v. Grass Creek Oil & Gas Co., 236 Fed. 481, 149 C. C. A. 533; U. S. v. Thirty-Two Oil Co. (D. C.) 242 Fed. 730; Cons. Mutual Oil v. U. S., 245 Fed. 521, 157 C. C. A. 633.

[2] The case in hand hinges upon the question as to whether the facts bring it within the true intent or meaning of the words "in diligent prosecution of work leading to discovery of oil or gas," as used in the law referred to. There is no dispute as to the facts, and summarized briefly they are that prior to January, 1909, the defendant Standard Oil Company had acquired title to or right to possession of 80 acres of land known in the record as the Talara lease, two or three miles to the west of the property in controversy, and one or two other sections in the same vicinity.

Being desirous of enlarging its operations by acquiring additional holdings, it entered into a contract in January, 1909, with one E. E. Jones, by which it acquired the possession, for development purposes, of four sections in township 32, including section 28, and two sections in the adjoining township on the west. The four sections of Jones' land in township 32 lay in a row along what was supposed to be the line of the strike, and one section thereof corners on land belonging to the Oil Company. Prior to the taking over of the property by the Oil Company, Jones had begun the development thereof as a unit, and for that purpose had established a camp on the southwest quarter of section 28, and had commenced drilling a well thereon, and was also engaged in drilling wells on two of the other sections. He had constructed a fully equipped rig ready for operation on the northwest and one other quarter of section 28, and done more or less work on each of the other claims.

Immediately on taking over the property the Standard Oil Company began a vigorous campaign of development of it in connection with its other property as a group or unit, and to that end had, prior to the withdrawal, increased its working force from time to time, enlarged its headquarters camp on the Talara lease by building bunk-

houses, warehouses, blacksmith shop, ice plant, etc., established a pipe yard at a convenient point on the railway, and three or four camps at different places on the property, laid water and gas mains, installed a telephone system, built roads, and assembled supplies, tools, and materials of different kinds, all of which were intended for and were used in drilling upon and developing the several locations as expeditiously as the exigencies of the situation and available labor and material would permit, with the object of reaching and discovering oil on each claim.

At the date of the withdrawal it had 24 strings of tools in operation, as many as the available water supply would permit, and had expended in developing and preparing to develop the property $500,000, and had 183 men on its payroll and $280,000 worth of tools and material on hand, $36,000 of which was received and unloaded on the day of the withdrawal. After the withdrawal it continued its operation unceasingly, increased its working force, assembled additional material, enlarged and rebuilt its water plant, extended its water and gas mains and telephone system, ordered material, and in January, 1910, made preparations for the immediate drilling of 20 additional wells, one in each claim upon which drilling was not then in operation, and in the spring of 1910, or as soon as practicable, commenced drilling on the property in controversy, and diligently continued such work to a discovery.

[3] No work was being done on the identical quarter section in controversy at the time of the withdrawal, or for some two or three months thereafter, except the moving of the derrick in October, 1909; but I do not regard that as a controlling fact in the case. The evidence to my mind shows that the work being done at the time of the withdrawal and continued thereafter was intended to and did directly benefit all the claims, and that the several contiguous claims were owned and being developed by the Oil Company in good faith as a group or unit, in a practical, businesslike, and economical way, and "it has long been the established law respecting such claims," says the Court of Appeals in Consolidated Oil Co. v. U. S., 245 Fed. 523, 157 C. C. A. 635, "that, where two or more contiguous ones are held by the same person or persons, work done in good faith upon any one of them, or outside of the boundaries of either of them, which directly tends to the development or benefit of all of the claims for mining purposes, should be held applicable to each and all of such claims." See, also, U. S. v. Thirty-Two Oil Co., supra; U. S. v. Honolulu Cons. Oil Co. (D. C.) 249 Fed. 168.

A clear and it seems to me an accurate statement of the law applicable to the facts in this case is to be found in the opinion of the Commissioner of the General Land Office, of date February 11, 1919, in the Honolulu Case, as follows:

"Work leading to the discovery of oil or gas may consist of labor and improvements actually performed and used in the common development of several mining claims, provided it is clearly shown that there exists a common ownership, that the work is of such a character as to be clearly adapted to and intended for a unit development, that the inclusion of each particular claim composing such unit is clearly apparent from the physical facts on the ground,

and that the nature of the common development is consistent and its extent commensurate with the character and area of the group of claims proposed to be developed as a unit. If labor and expenditures have been applied in the manner accepted generally and in accordance with good business practice, all conditions considered, one act following another in logical and orderly sequence, as dicated by experience and reasonable judgment, with the object of reaching and discovering the oil or gas measures lying within the claim or group of claims, then due diligence has been shown, and the requirements of the act met in this respect, provided that at the date of withdrawal and continuously thereafter to discovery on each particular claim either (a) such common development and improvement leading to discovery as may be properly and directly credited in part to each particular claim, pursuant to the principles above stated, or (b) development and improvement work leading to discovery on the particular claim itself, are continued diligently and without interruption, on a scale commensurate with the extent of the unit development and in accordance with good economic practice, the required continuity of such common or particular development and improvement to be determined from the work and improvements actually done and made on the ground."

Applying these principles to the case in hand, I am of the opinion that the defendants have brought themselves within the saving clause of the Pickett Act.

[4] In reaching this conclusion I have not overlooked the provisions of the contract between Jones and the defendant Oil Company by which the company reserved the right to delay drilling operations on one claim until oil had been discovered on another. This was a limitation of the obligations of the company to Jones, but did not prevent it from initiating drilling work at any time and from proceeding as fast as it desired, and throws but little, if any, light upon the issues in this case.

It follows that the complaint should be dismissed; and it is so ordered.