UNITED STATES v. BOOTH-KELLY LUMBER CO. et al.

BOOTH-KELLY LUMBER CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 24, 1913.)

No. 2,175.

PUBLIC LANDS (§ 120*)—SUIT FOR CANCELLATION OF PATENTS—FRAUDULENT ENTRIES—EVIDENCE CONSIDERED.

Evidence considered, in a suit by the United States for the cancellation of patents to public lands entered under the stone and timber act on the ground of fraud, in that the entries were made for the benefit of defendant lumber company, which paid the government price and all fees and expenses and gave each entryman a bonus on receiving a deed to his land, and *held* sufficient to sustain the allegations of the bill and to entitle complainant to a cancellation of all of the patents.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. § 120.*

Cancellation of patents to public lands, see note to Hartman v. Warren, 22 C. C. A. 38.]

Appeal and Cross-Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by the United States against the Booth-Kelly Lumber Company, Stephen A. La Raut, Alice La Raut, Ethel M. La Raut, and Lucy La Raut. From the decree, both the United States and defendant Lumber Company appeal. Reversed on appeal of the United States, and affirmed on defendant's appeal.

On May 24, 1910, the United States brought a suit in the court below to cancel five patents of land which had been issued under the Timber and Stone Act, on the ground that the initial applications of the patentees had been fraudulently made by them for the use and benefit of the Booth-Kelly Lumber Company, and with the understanding at the time when they were made that the entrymen should each convey the land so entered by him to said company. The bill alleged that that company paid and advanced all of the fees, costs, and expenses and purchase price of said land, and paid to each entryman $100, and received from each a deed. The entrymen were Edward Jordan, Stephen A. La Raut, Alice La Raut, Ethel M. La Raut (now Ethel M. Lewis), and Lucy La Raut, and they were made codefendants with the Booth-Kelly Lumber Company. A decree was taken pro confesso against Jordan. On September 21, 1910, all the other defendants answered the bill, denying that the Lumber Company furnished any of the purchase money,

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fees, costs, or expenses of acquiring the land, and denying the allegations of fraud on the Timber and Stone Act. The answer alleged, that on or about July 22, 1902, the Lumber Company purchased the land entered by Jordan for the sum of $550, which was actually advanced and paid to and for his use and benefit, and received a warranty deed from him therefor, relying upon the final receipt for said land, and believing that all the proceedings anterior thereto were bona fide, etc.; that on May 7, 1907, Stephen, Alice, Ethel, and Lucy La Raut, by virtue of the patents issued to them, were seised and possessed of full legal and equitable ownership of the land granted by said patents, and that on said day the Lumber Company purchased the land described in said patents, and each of the patentees received therefor the sum of $600, which sum was actually advanced and paid to and for each of them, relying upon the patents, etc. And there is in the answer this allegation by the Lumber Company: "That this defendant is informed and believes, and therefore alleges, that after the said entries mentioned in said bill were made by said several entrymen, charges were made and filed with the complainant's officials in the Interior Department, whose duty it was to investigate and determine the same, that said entries were fraudulent in character, and were made for the benefit of this defendant, and that said charges were fully investigated by the Interior Department for the purpose of ascertaining the truth or falsity of said charges, and to determine whether patents should be issued upon said entries, or whether the same should be canceled, and that such proceedings were had in said matters that said several entries were fully investigated, by complainant's officials charged with that duty, and testimony and affidavits were taken upon said investigation, and the complainant and said entrymen were duly represented at said hearing and investigation, and that upon a full investigation and hearing upon said charges, and with full knowledge of all the facts, it was found and determined by the said officials that said entries were not fraudulent, and that the irregularities in said entries, if any, were not of sufficient gravity to require or justify the cancellation of said entries, and ordered that patents issue upon said entries for said land, and that patents were thereupon issued therefor, as alleged in said bill of complaint." After a replication had been filed, and at the beginning of the taking of testimony before an examiner, on December 19, 1910, the Lumber Company, Lucy La Raut, and Ethel M. La Raut obtained permission to amend their answer, "so as to admit that the defendant the Booth-Kelly Lumber Company is the holder of the legal title to the lands entered by and patented to Ethel M. La Raut and Lucy La Raut, but denying that it is the equitable owner of said land, and alleging affirmatively that said Ethel M. La Raut, now Ethel M. Lewis, and Lucy La Raut, ever since said patents were issued to them, have been and now are the equitable owners of said land, and that the deeds made by them to the Booth-Kelly Lumber Company were intended to be and were in fact mortgages to secure the payment of certain advances made and to be made to them by said company, to enable them to enter and pay for said land and for other purposes." On the issues so made, and the testimony, the court below entered a decree canceling the patent which had been issued to Jordan and dismissing the bill as to the other entries. From that decree both the complainant and the Lumber Company have appealed.

A. C. Woodcock, of Eugene, Or., and Albert H. Tanner, of Portland, Or., for appellant Booth-Kelly Lumber Co..

John McCourt, U. S. Atty., of Portland, Or.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The evidence shows that some months prior to the date of the entries, and some time during the years 1901 and 1902, the Lumber Company had the land in controversy cruised; that the company was acquiring lands in the vicinity of these lands during those years; that at that time

and until 1907, R. A. Booth was the manager of the company; that between January, 1902, and January, 1903, J. H. Booth was secretary of the company and was the receiver of the United States land office at Roseburg, Or.; that John F. Kelly was the vice president of the company, and that he, under the direction of R. A. Booth, attended to the purchase of lands for the company; that George Kelly, a director of the corporation, had charge of its sawmills and was manager to succeed R. A. Booth in 1907; that at the time of the entries in controversy the company had sawmills at Saginaw, Coburg, Wendling, and Springfield, Or., and that they owned and acquired large tracts of land in the vicinity of those mills; that R. A. Booth is the brother-in-law of Stephen, Ethel, and Lucy La Raut, and that Alice La Raut is Stephen La Raut's wife; that at the time when the entries were made Stephen and Ethel La Raut and Edward Jordan were in the employment of the Lumber Company, and they "were very poor at that time"; that D. H. Brumbaugh was a cruiser in the employment of the Lumber Company, and that at the request of John F. Kelly he showed the entrymen and entrywomen their respective claims. The records of the land office show that all the entries were filed in February, 1902, that the final proofs were made on May 7 and May 8, 1902, that the patents issued on August 3, 1904, and that upon the request of John F. Kelly the patents were delivered by the officers of the Roseburg land office to Frank E. Alley.

As to the main issue in the case, which is whether the lands in controversy were entered pursuant to an understanding or agreement between the applicants and the Lumber Company whereby the latter was to acquire the same, the oral testimony is conflicting. Jordan testified, and the court below found, that he had such an understanding and agreement, and that he entered the land at the instance of one of the officers of the Lumber Company, upon the promise of the payment of $100 to him for his service in so doing. Mrs. Applestone, a daughter of Alice La Raut, testified that her mother told her that she had taken up a claim for R. A. Booth, and was to be paid $100 for her claim, that she was paid that sum, and that Mr. Booth was to pay her expenses, and did so. She testified, also, that her stepfather, Stephen La Raut, took up his claim for the same reason that her mother did, but she was unable to say whether it was he or her mother who told her so, and that her mother told her that R. A. Booth had asked her, her stepfather, and Ethel to take up claims, and that her mother said that her stepfather had received $100 for doing so. She testified, further, that her mother got $50 more eight or nine months before the time when the witness gave her testimony. There was no contradiction of this testimony by either Stephen La Raut or his wife. They were not called as witnesses, nor were their depositions taken. Mrs. Applestone was apparently a disinterested witness, and no reason is suggested why her testimony should not be given full credence. Ethel and Lucy La Raut testified in the main in harmony with the testimony of R. A. Booth to the effect that the four entries of the La Rauts were made under an agreement with R. A. Booth, who was

their relative, and the then manager of the Lumber Company, by which the Lumber Company was to pay the government price for the land and all the expenses incident to the entries, and keep an account thereof, the repayment of which to the company Mr. Booth guaranteed, and in pursuance of which and as security therefor he took to himself the deeds to the lands which they entered. And there was testimony that in 1910, when Stephen La Raut and his wife desired to remove to Alberta, Canada, they sold their claims to the defendant company for $50 each in addition to the $100 they had each received, a price which was satisfactory to them, and that the other two claims still belong to Ethel and Lucy La Raut; the company holding the title as security. The court below found that the Lumber Company acquired by purchase the claims of Stephen La Raut and wife, and that it holds the title to the other two claims only as security for advances made to Ethel and Lucy La Raut.

From the conflicting parol testimony which the record presents, we turn to the evidence shown by contemporaneous entries in the books and records of the Lumber Company, and to facts and circumstances established thereby which do not depend upon human memory for support, and which cannot be contradicted. The following facts are undisputed: The La Rauts, together with Jordan, who was in the employment of the Lumber Company, made their applications for timber claims at the same time, and the company paid their traveling expenses to and from Roseburg and all incidental expenses. The company paid for all the publications of notice, and charged the expense thereof to its stumpage account, and made no charge therefor at any time in its books against the individual entrymen. The company paid the purchase price of the lands and all the fees, traveling expenses, and other expenses incidental to final proof. The final proofs were made in May, 1902, and in July following each of the entrymen executed and delivered a deed of the land. Jordan's deed, and probably all of the deeds, were executed to the company. The deeds from the La Rauts having been subsequently destroyed, the testimony leaves it uncertain whether they were executed to the company or to R. A. Booth. At the time when those deeds were executed, each entryman received the sum of $100. The deed from Jordan was not recorded until September 6, 1907. The La Raut deeds were never recorded, but in the latter part of 1904 or early in 1905, at about the time of the investigation by the government of land frauds in Oregon, those deeds were returned to the makers and destroyed. Ethel and Lucy La Raut made other deeds in 1907, at which time they were each paid $25. On February 3, 1910, Stephen La Raut and his wife made a deed of their lands to the company, and were each paid $50. The entrymen of the claims in controversy never saw the lands, excepting at the time when they viewed them prior to making their entries, and it is admitted that they never made any effort to dispose of them, never inquired about the value of them, or the amount of timber thereon, and made no inquiry as to the expenses of the entries or the payment of taxes thereon, or assumed any control or ownership of the lands. The Lumber Com-

pany on its books charged itself with all expenses in relation to these lands from and after the time when it caused the same to be cruised; shortly before the entries were made. When the final proofs had been taken, and the lands had been paid for, individual accounts were opened under the name of each of the entrymen, in which were charged the payment of the purchase price of $400 for the land, and a payment of $100 to each entryman, and each account was balanced by a credit of $500 to stumpage, and none of them was ever afterward reopened. Each account begins with the entry of the payment of the purchase money of $400 on May 8, 1902. The accounts with the La Rauts all end on July 31, 1902, with the "charge to stumpage, $500." The account under the name of Ethel La Raut may serve as a sample of all.

Ethel La Raut.

1902
May   8.   J. 108 Check.................................$400 00
July 31.   J. 200 Check.................................  100 00
July 31.   J. 199 Charge to stumpage for lots 9, 10, 15, 16,
            Sec. 28, Tp. 21—2 West......................          $500 00
                                                       _____ _____
                                                         $500 00   $500 00

But the expenses of the entrymen in going to Roseburg, lodging there, and returning, the recording fees, and the publication notices were not entered in these individual accounts, but were entered in the books of the company under the heading "Brumbaugh land claims," and were carried into the stumpage account under the item "Cruising." The lands so deeded by the entrymen in 1902 were immediately carried into the general land account of the company. Thereafter the company paid taxes thereon, together with its taxes on other lands, in a sum total. No explanation is made of the fact that the deeds so taken were not recorded. No satisfactory reason is given why the deeds were destroyed. No explanation is given of the fact that for a year and a half after the destruction of the deeds neither Booth nor the Lumber Company had any conveyance from the La Rauts.

The theory that R. A. Booth advanced the costs and expenses and purchase price for the entries in order to assist his relatives who were in poor circumstances, and that he thereafter advanced money to them for the same reason and took the deeds as security illy comports with certain significant facts that appear in the record. One of these is the cotemporaneous payment to Jordan and the four members of the La Raut family of the identical sum of $100 each at the time when their deeds were taken. Another is that neither Ethel La Raut nor Lucy La Raut explained why she received the $100. Lucy testified that she did not need it, or use it, and that when she received it she loaned it to her father, who paid her interest on it. Another is that not another payment appears by the books of the company to have been made to any of the La Rauts until the time when the company received new deeds from each. When the second deeds were obtained from Ethel and Lucy in 1907, they were each paid $25. When the deeds were obtained from Stephen La Raut and his wife in 1910,

they were each paid $50. None of these payments was charged against the La Rauts personally, nor were the old accounts under their names, which had been balanced and closed, reopened; but these payments were each charged in the stumpage account of the Lumber Company. In short, there is nothing in the books of the company to show that any of the La Rauts owed the Lumber Company or R. A. Booth at any time after their accounts were closed, or that the company paid out any moneys to their account, or that the company held any of the conveyances as security, or that R. A. Booth guaranteed the repayment to the Lumber Company of the moneys which it had so advanced. Another important fact is that at the time when the second deeds were obtained from Stephen La Raut and his wife, according to the decided weight of the testimony, their claims were each worth at the lowest estimate $4,000, and probably $5,000. A most significant fact, also, is the change which was made in the answer of the defendants when the government began to take its testimony before the examiner. The original answer had then been on file three months. The original answer denied:

"That the entire or any expense attending the making of said entries or purchase, including the payment of said purchase money or the said fees of register or receiver, or all other expenses or disbursements, or any expenses or disbursements, were paid or borne by the said defendant corporation."

It is not claimed, nor can it be, that the answer was prepared by counsel or sworn to in ignorance of the facts. The complaint had drawn the attention of the defendants sharply to the charges which were made as to the alleged fraud in acquiring the lands in controversy. The answer was complete in every detail, and one of its allegations was that the charges made in the bill had been the subject of investigation by officials of the Interior Department, who had fully investigated them for the purpose of ascertaining the truth or falsity of said charges. Another allegation was that the Lumber Company had purchased the lands relying upon the patents, and had paid Jordan $550, and each of the other patentees $600, therefor. The answer was sworn to by A. C. Dixon, the manager of the Lumber Company. He testified that R. A. Booth had told him the facts in regard to these claims, and had informed him that he had caused the company's money to be advanced to pay the expenses and purchase price thereof, and that he had guaranteed the repayment of the money to the company. Dixon testified that he was fully advised of the facts, and that he had stated the facts to the attorneys who prepared the answer. He admitted that the answer was read to him; but he testified that without paying attention to the details, or discussing the various points embodied in it, he had signed it, supposing it was a mere matter of form. But he could not explain why the answer was prepared in the way in which it was, nor was any witness called to explain it.

These facts and circumstances, while perhaps they do not amount to a demonstration of the truth of the allegations of the bill, result in a very decided preponderance of the evidence in favor of that conclusion, and they are sufficient in our judgment to overcome all the presump-

tions that attend the issuance of the patents, and are sufficient to meet the requirement of the rule that in a suit to set aside a patent the testimony on which it is done must be clear, unequivocal, and convincing, and must be more than a bare preponderance of the evidence, which leaves the issue in doubt. The findings in the court below were made upon evidence which had been taken before an examiner, and not in open court, and they are not attended with presumptions in favor of findings which are made upon conflicting testimony, where the trial judge has the opportunity to observe the demeanor of the witnesses.

As to the land patented to Jordan, the decree is affirmed. As to the other lands in controversy, it is reversed, and the cause remanded, with instructions to enter a decree for the United States in accordance with the prayer of the bill.