UNITED STATES v. MARSHALL et al.

(Circuit Court of Appeals, Eighth Circuit. January 22, 1914.)

No. 3920.

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 1009*)—DECREE IN EQUITY—PRESUMPTION.
   Upon appeals in equity cases the decision of the trial court is presumptively correct and will not be revised save where there has intervened an obvious error of law or a serious mistake of fact.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970–3978; Dec. Dig. § 1009.*]

2. APPEAL AND ERROR (§ 934*)—DECREE IN EQUITY—PRESUMPTION.
   This presumption exists not only where the testimony was taken in open court and where the trial judge thus saw and heard the witnesses, but also where the submission was entirely upon deposition. It is, however, less strong in the latter instance.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781, 3782; Dec. Dig. § 934.*]

3. INDIANS (§ 14*)—ALLOTMENT PATENTS—CANCELLATION—FRAUD—EVIDENCE.
   Indulging this presumption in favor of the decree below, in a suit by the United States to cancel homestead and allotment patents issued by the officers of the Choctaw and Chickasaw Nations to a deceased Indian under the provisions of "An act to ratify and confirm an agreement with

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Choctaw and Chickasaw Tribes of Indians and for other purposes," approved July 1, 1902, c. 1362, 32 Stat. 641, it is *held* that the evidence was sufficient to sustain a decree dismissing the bill as against one claiming the status of a bona fide purchaser for value without notice and quieting the title of such purchaser.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 2, 31–36, 46; Dec. Dig. § 14.*]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Proceeding by the United States against J. Horace Marshall, administrator, etc., and others, to cancel a patent alleged to have been obtained by fraud. From the decree, the United States appeals. Affirmed.

C. C. Herndon, of Muskogee, Okl. (D. H. Linebaugh, of Atoka, Okl., and John B. Meserve, of Muskogee, Okl., on the brief), for appellant.

A. H. Ferguson, of Durant, Okl. (C. C. Hatchett, of Durant, Okl., on the brief), for appellees.

Before SANBORN and SMITH, Circuit Judges, and POPE, District Judge.

POPE, District Judge. This is a proceeding by the government to cancel a patent alleged to have been obtained by fraud. The patent ran to one Cornelius Barnes, a deceased Choctaw Indian, and covered a selection of land made by his administrator, Marshall, upon a showing by the administrator that Cornelius Barnes had died subsequent to September 25, 1902. The relevancy of this date arises from the fact that heirs were by the Act of July 1, 1902, c. 1362, 32 Stat. 641, allowed participation in the allotment of the common lands of the tribes where the Indian, from whom the inheritance came, had been living at the date of the ratification by the tribes of the agreement with the government embodied in the statute just mentioned, which ratification was voted on September 25, 1902, the date above mentioned. The administrator and Robert Barnes, the brother and sole heir at law of Cornelius Barnes, were made parties defendant. Two alleged grantees from Robert Barnes were also made parties: First, W. L. Bates holding under a deed duly recorded, dated August 20, 1904; and, second, V. Bronaugh whose deed from Robert Barnes was dated August 22, 1908. The fraud alleged in procuring the patent was that the application for it was supported by two affidavits, one made by Robert Barnes, showing Cornelius Barnes to have died after September 25, 1902, when as a matter of fact, known both to the administrator and to Robert Barnes, he died during the September preceding. It is also alleged that the deeds to Bates and Bronaugh were invalid because made at a time when there was no power of alienation in Robert Barnes. This last contention, however, was abandoned upon the trial in view of Mullen v. U. S., 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834. The defendants, except Bates and Bronaugh, suffered default. These latter answered separately, setting up their respective deeds and claiming the status of bona fide purchasers for value. The

District Court held that Cornelius Barnes died before September 25, 1902, and that as against his administrator and his heir at law, Robert Barnes, the proceeding must prevail. It decided, however, that Bates was a bona fide purchaser for value without notice of the fraud and dismissed the bill as to him, quieting the title in him upon his prayer for cross relief. There was a decision against Bronaugh upon the ground that, the title being held to be in Bates under a deed made and duly recorded in 1904, there was nothing left in Barnes for Bronaugh to take under his deed given four years later. Bronaugh has not appealed, so that the case here is between the government and Bates. On this appeal the controversy is purely one of fact. The questions raised are: First, was the court below wrong in holding that the deed from Barnes to Bates was genuine? And, second, was it wrong in holding that Bates was a bona fide purchaser for value?

[1, 2] To secure a reversal upon such a basis as that just mentioned the appellant must convince us not only that the trial court may have been wrong, but that it was manifestly wrong. There must, under the holdings of this court, have been an "obvious error" of law or a "serious mistake" in dealing with the facts. Harrison v. Fite, 148 Fed. 781, 78 C. C. A. 447; Mastin v. Noble, 157 Fed. 506, 85 C. C. A. 98; State of Iowa v. Carr, 191 Fed. 257, 112 C. C. A. 477; Harper v. Taylor, 193 Fed. 944, 113 C. C. A. 572; De Laval Co. v. Iowa Co., 194 Fed. 423, 114 C. C. A. 385. The error must be "clear and palpable." Babcock v. De Mott, 160 Fed. 882, 88 C. C. A. 64. The conclusion of the trial court is "presumptively right." State of Iowa v. Carr, supra. Some distinction relieving from this rule is claimed in the present case because the testimony was not taken before the judge but before an examiner, and it is said that under such circumstances this court is in as favorable a situation to deal with the matter as was the court below. United States v. Booth Kelly Lumber Co., 203 Fed. 423, 121 C. C. A. 533, from the Ninth Circuit, is cited to this point. But the question is not so much one of situation to decide as of where the law places the primary determination of questions of fact. While no doubt the circumstance that the district judge personally heard the witnesses tends to strengthen the presumption in favor of his conclusion—a consideration mentioned by this court in Coder v. McPherson, 152 Fed. 951, 953, 82 C. C. A. 99, also in Harper v. Taylor, 193 Fed. 944, 113 C. C. A. 572, by the Circuit Court of Appeals for the Sixth Circuit in Mt. Vernon Co. v. Wolf Co., 188 Fed. 164, 110 C. C. A. 200, and by the Circuit Court of Appeals for the Ninth Circuit in The Santa Rita, 176 Fed. 890, 100 C. C. A. 360, 30 L. R. A. (N. S.) 1210—the fact that he did not hear such witnesses, but that the proofs before him were entirely by deposition or upon examiner's report, does not destroy the presumption. Such still exists in favor of his conclusion. To hold otherwise would in effect be to make this the court of first instance. The District Court is not in such matters a mere conduit. It, not this court, is the trial court. Our functions are simply to guard against manifest error on its part, and this is true whether such arises upon hearing witnesses or upon reading a record.

[3] Starting with this presumption in favor of the decision of fact

below, is there apparent error in the court's determination of either of the matters mentioned? We believe not. If the genuineness of the deed from Barnes to Bates was indeed an issue under the pleadings—a matter we do not find it necessary to decide—we have no fault to find with the conclusion below that the deed was made by Barnes. The deed was by mark. There were two witnesses to it and an acknowledgment before a notary. One of these witnesses, Robertson by name, testified that Barnes in his presence made his mark to the signature and thereupon acknowledged the deed. Barnes testifying through an interpreter denied this. But Barnes was the heir whose false affidavit as to the date of his brother's death had induced the fraudulent patent. Upon the elimination of the Bates deed depended the payment to him of some $500 yet due upon the subsequent Bronaugh transaction. The court below was certainly not bound to award unreserved credence to an interested witness, thus discredited by a previous perjury. The notary public, Silas Cole, also denied the acknowledgment. But complying with a request on cross-examination this witness wrote his name for purposes of comparison with that upon the deed. This signature seems to have been a very peculiar one. The court below had both of these signatures before it, and we learn from its opinion that this comparison proved very convincing that Cole was telling an untruth. We cannot say that the trial judge was wrong in this.

The other issue was as to whether Bates was a bona fide purchaser. Bates was a member by marriage of the Chickasaw Nation. Wishing to secure the land involved, he made his wants known to Johnson, a real estate agent, paying him $50, either as compensation for securing the tract or as a forfeit to the owner to insure the trade, should one be arranged. About this time Robertson, the witness above mentioned, communicated to Johnson that he had a party, who later proved to be Robert Barnes, who was willing to sell this land after securing it upon the basis of the tribal rights of his deceased brother Cornelius. The proof shows that Robertson by an arrangement with Barnes was to retain from the latter for his service all he could get out of the matter over $1,050. Robertson and Barnes furnished the proofs showing the date of the death of Cornelius. Armed with this, the defendant Marshall, who seems to have acted in the matter purely as an accommodation to all concerned, qualified as administrator and filed upon the land, whereupon patent issued inuring to Robert Barnes. Upon the closing of the trade Bates turned over $1,450, the full balance of the agreed purchase price of $1,500, to Johnson to be by him paid over upon the delivery of the deed. When this latter was delivered by Robertson and Barnes, the money was paid to the former as the representative of Barnes, and there the transaction closed so far as Bates was concerned. Bates had no notice of any misrepresentation or fraud in the procurement of the patent. Some point seems to be made just here that Robertson has paid over only a small part of the money to Barnes. But that did not concern Bates. Robertson was not his agent, but the agent of Barnes. Some argument is also made that Johnson was the agent of Bates and knew, or at least.

by·diligence might have known, that Cornelius Barnes died before 1902. But the proofs are clear that Johnson knew nothing of this. Nor was he called upon to know. The latter duty rested, not upon him, but upon those who were applying for the patent. The duty of furnishing a title to the land was upon the seller, not upon the purchaser or the purchaser's agent. It is said, however, that Marshall, the administrator, at least should have known whether the affidavits as to the death of Cornelius were true and that his failure to verify their accuracy was legal fraud imputable to Bates. Marshall, however, did not represent Bates. True, he consented to serve as administrator upon a request from Bates and Bates was one of his bondsmen. But ·these circumstances did not make him the agent of Bates. As administrator his agency was as an officer of the law and for certain purposes as a representative of the beneficiary of the estate. We are of opinion that any penalty for what he may have failed to ascertain, or for what Barnes and his agent Robertson may have known but failed truthfully to present, must be visited upon these and not upon one who has purchased in good faith and for full value. Such the trial court found Bates to be, and we find no fault with that conclusion.

The decree will accordingly be affirmed.