### ROSWELL DRAINAGE DIST. et al. v. DICKEY et al.

(Circuit Court of Appeals, Eighth Circuit. August 1, 1923.)

No. 6190.

1. **Appeal and error ⬅748(1), 766—Too specific assignment or specification of errors not ground for dismissing appeal.**

An appeal will not be dismissed because counsel, in attempting to comply with rules 11 and 24 of the Circuit Court of Appeals (188 Fed. ix, xvi, 109 C. C. A. ix, xvi), in the assignment and specification of errors in the brief, have been more specific than required.

2. **Appeal and error ⬅931(1), 1011(1)—Findings of fact by trial court presumptively correct.**

Findings of fact by the trial court on conflicting evidence are presumptively correct, and will not be reversed, except for obvious error of law or serious mistake of fact.

3. **Contracts ⬅212(2)—Contract providing only for diligent and continuous prosecution of work, requires completion in reasonable time.**

A contract for digging trenches and laying tile therein, which fixed no time for completion, but provided that the work should "be prosecuted vigorously and continuously," required completion of the work within a reasonable time, the situation and existing conditions regarded, and under such contract the effect of war conditions, causing difficulty in securing labor and delay in obtaining materials, may be considered.

4. **Contracts ⬅316(5)—Insistence on performance after breach is waiver of breach.**

Where payments due a contractor were in arrears, insistence by the other party on continued performance was a waiver of prior delay in prosecution of the work.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by Walter S. Dickey against the Roswell Drainage District and others. Decree for complainant, and defendants appeal. Affirmed.

L. O. Fullen and W. A. Dunn, both of Roswell, N. M., for appellants.

Maurice H. Winger, of Kansas City, Mo. (John T. McClure, of Roswell, N. M., and Alton Gumbiner and Miller, Camack, Winger & Reeder, all of Kansas City, Mo., on the brief), for appellees.

Before SANBORN, Circuit Judge, and BOOTH and FARIS, District Judges.

FARIS, District Judge. Appellee Walter S. Dickey (impleaded for the purpose of a counterclaim filed by appellants, with his surety, Maryland Casualty Company), who was the plaintiff below, brought this action in equity to cancel a contract made by him with appellant Roswell drainage district, and for an accounting, and to recover, on a quantum meruit, money alleged to be due said appellee for work and materials done and furnished by him, pursuant to such contract and before an alleged breach thereof by the drainage district.

[1] In limine, appellees move to dismiss this appeal, for that, as they allege, appellants, both upon the record and in their brief, have failed to comply with the provisions of rules 11 and 24 of the Rules of this Court (188 Fed ix, xvi, 109 C. C. A. ix, xvi). In a strictly technical sense this motion may have merit; but it is clear that appellants have endeavored to comply with these rules, and their failure if any, has been due to an effort to be more specific even than required by the rules invoked. In the zeal of counsel minutely and meticulously to set out the precise nature of the errors relied on, they have overlooked the intrinsic nature of these alleged errors, which they could have stated better if they had stated them more broadly. In such a situation, we are of opinion that appellants ought not to be penalized by a dismissal of their appeal, and the motion to dismiss the appeal is accordingly overruled.

Coming now to the merits: Upon the trial below each of the parties contended that the contract had been breached by the other— plaintiff, Dickey, for that he had not been paid the money due him for work, labor, and materials, as and at the times provided in the contract; and defendant drainage district, for that Dickey had used certain materials in the work, to wit, iron for manholes, of less thickness than was prescribed by the specifications, and for that he had not vigorously and continuously prosecuted the work, as in the contract provided. Upon these contentions, the drainage district bottomed its counterclaim for damages accruing to it from the alleged breach of the contract by Dickey.

Briefly stated, and so far as is pertinent, the contract sought to be canceled provided for the digging of about 100 miles of trenches, the laying of sewer tile therein, the backfilling of such trenches, the excavating of rock and quicksand incidental thereto, the straightening of a river, called Southsprings river, and the construction of manholes; all labor, machinery, and materials to be furnished by Dickey. The

contract involved the definite payment of $200,000 to Dickey, with an indefinite sum for extra work and materials, not specified in the plans and specifications, which were to be paid for at the actual reasonable cost thereof, plus 20 per cent. Dickey was to be paid 90 per cent. of the contract price of all work completed, on the 5th and the 20th of each month; of the balance, 7½ per cent. was to be paid on the completion of any given section, and the remainder, of 2½ per cent., on final completion and acceptance of all of the work. Dickey contracted to commence work on the 31st day of August, 1915, and, as forecast, to prosecute it vigorously and continuously to completion. Save this provision, no time was fixed for its completion.

The trial court dismissed the counterclaim and found for Dickey, canceling the contract, because of a breach thereof by the drainage district in the matter of making payments due Dickey, as and when such payments fell due, and entered judgment for him for the sum of $21,-276.65. From this decree this appeal was taken by the drainage district in the conventional mode.

The errors urged for reversal are: (a) That the trial court erred in holding that Dickey's use of iron, in constructing manholes of a thickness less than called for in and by the specifications, was not a breach of the contract; (b) in holding that Dickey's alleged failure to prosecute the work vigorously and continuously was not a breach of the contract; (c) in holding that Dickey was entitled to recover $14,711.28, for extra work in excavating rock and quicksand; and (d) in finding against the drainage district upon its counterclaim.

[2] The fact is conceded that Dickey, in constructing the manholes, used iron of 16-gauge, instead of 14-gauge, or $1/64$ of an inch less in thickness than was called for by the specifications. But Dickey in excuse therefor pleads waiver by the drainage district, mutual mistake in the specifications, and the consent of the engineer in charge for such use, as permitted by the contract. Upon these defenses much evidence was offered upon the trial by both sides. By the preponderance of that evidence it is shown that, while 14-gauge iron was specified for use in constructing manholes, it was by all parties understood that 16-gauge iron should be used for reasons of economy; that the prices for these manholes was fixed upon the basis of the use of 16-gauge iron; that the engineer in charge had the authority under the terms of the contract to permit such use, and that he did permit it, and that the district itself, by its acts, waived this departure from the letter of the specifications. We are of opinion, as already said, that these defenses against the conceded fact were proven by the great weight of the evidence. But, even if this view be wrong, there was evidence enough upon these defenses to put in motion the rule that, where a chancellor has considered conflicting evidence and has based his findings thereon, such findings are to be deemed presumptively correct, and these findings will not be reversed, save in the presence of an obvious error of law, or a serious mistake of fact. United States v. Marshall, 210 Fed. 595, 127 C. C. A. 231; Brookheim v. Greenbaum, 225 Fed. 763, 141 C. C. A. 89. It follows that this contention of appellants should be disallowed.

[3] The contract, it will have been noted, fixed no definite time within which completion should be had, save that connoted by the broad stipulation that the work should "be prosecuted vigorously and continuously." In such situation Dickey was only bound to complete the work in a reasonable time, the existing conditions, situation, and circumstances regarded. The agreement to prosecute the work vigorously and continuously is therefore to be interpreted in the light of the time contemplated for completion, to wit, a reasonable time, and he was required to exercise only such vigor and continuousness of prosecution as would insure completion in such time, the situation, and existing conditions regarded. The work was in hand during the Great War, and it was being prosecuted before, during, and after this country became involved in that war. The evidence discloses a great scarcity of labor, great incompetency of the laborers secured, and great difficulties in procuring materials for the work and parts for repairs to machinery.

If there had been, as there was not, a fixed and definite time agreed on for completion, and no exceptions written into the contract for delays incident to circumstances, then, of course, the scarcity of labor and the incompetency thereof, and the difficulty of getting materials and repairs, would have afforded no legal excuse for a failure to complete within the period provided. But when, by implication of law, completion is required only in a reasonable time, that time which is reasonable will be determined by a reference to the situation existing at and pending performance. 13 C. J. 685.

[4] Moreover, it is urged by appellees that any alleged breach deducible from the fact of failure to prosecute the work in the manner by contract provided was waived by the drainage district, for that the latter, after such alleged breach by Dickey, and while it was itself in arrears in making payments to him, continually insisted on his proceeding to complete the work. In a similar situation, involving, as here, coun04 charges of breach of contract, it was said in the case of Benjamin Fuel & Supply Co. v. Bell, etc., Co., 284 Fed. loc. cit. 229:

"The failure of the plaintiff to pay on the 15th of June and July was not induced by defendant's alleged failure to make the required deliveries, for the plaintiff did not know that it had not received one-third of the output of the mines from May 10th to June 30th until sometime in the month of August. If the plaintiff did not receive one-third of the output during that time, if it had known that fact, it could have rescinded the contract and sued for damages, or affirmed the contract and deducted the amount it had lost because of short deliveries from what it owed defendant for the coal already delivered, and then paid the difference. In ignorance of the alleged short deliveries, it could do neither, but it could and should have paid for the June deliveries on July 15th. This it deliberately failed or refused to do, though defendant was actually clamoring for its money due on the coal it had delivered. It now seeks to justify its failure to pay in accordance with the contract by the defaults of the defendant of which it was at that time ignorant. In other words, it argues that one breach justifies another, and when both parties to a contract separately breach it, one breach neutralizes the other, and results in the affirmance of the contract; that the second breach, deliberately made in ignorance of the first, cures the first, and the contract stands just as though no breach had been made, in spite of the determination of the party damaged by the second to terminate it. We are unable to assent to this proposition. One breach has no neutralizing effect upon the other.

The party injured by a breach may disregard it, or terminate the contract, but he may not ignore it, and plead it as an offset to his own breach."

Of the facts, that the drainage district was withholding payments due to Dickey, and that in the meantime it was urging completion, there is no doubt upon the record. Moreover, upon the question of what would have been a reasonable time within which to complete the work, the evidence was conflicting; some of the witnesses place such time at four years, and others at six years. There was also conflicting evidence upon the question whether Dickey had vigorously and continuously prosecuted the work, under the situation confronting him. Reliance in such case may again be had upon the rule touching the presumptions which this court is permitted to indulge, with reference to the chancellor's findings upon conflicting evidence. Harrison v. Fite, 148 Fed. 781, 78 C. C. A. 447; Thallman v. Thomas, 111 Fed. 277, 49 C. C. A. 317. It follows that, for both or either of the reasons given, the finding upon this question ought not to be reversed.

The question whether the trial court erred in allowing Dickey extra compensation for excavating rock and quicksand is one whereof the solution is furnished by the contract itself. This contention of appellants is bottomed on that part of the contract which fixes an upset price for the work of straightening Southsprings river, and so appellants contend that, since Dickey was to get $9,947.27 for this work, he was not entitled to extra compensation therefor, even though he met with rock and quicksand in its performance. This view wholly overlooks and leaves out of consideration those provisions of the contract, which were of general application, that Dickey should receive $3.50 per cubic yard for solid rock excavation requiring blasting, where the amount thereof exceeded 100 cubic yards, and $4 per cubic yard for the excavation of quicksand, where in the opinion of the engineer sheeting was required, in excess of 100 cubic yards. There was little, if any, dispute about the facts on this point. Upon the trial the evidence conclusively showed the correctness of this finding, provided the above clauses of the contract apply to excavation in the work of straightening Southsprings river.

These provisions for extra pay for rock and quicksand excavation are, as said, general ones, and clearly apply to rock and quicksand, wherever encountered in the quantities stated, during the work of excavation. It is clear, therefore, that, if they were not intended to apply to excavation in Southsprings river, they do not apply to any excavation whatever. This is apparent, because compensation for laying sewer tile is based wholly upon the number of lineal feet of tile of various diameters to be laid; and the work of excavation and trench filling is included in the price per foot of tile laid, without fixing any additional compensation for excavation whether in soil or in rock and quicksand. If, then, these clauses do not apply to excavation in Southsprings river, they are nugatory, and wholly void and inapplicable to any excavation required to be done under the contract. The contention of appellants has the effect to read them entirely out of the contract, and accordingly it is disallowed.

Having reached these conclusions, no occasion exists to discuss

292 F.—3

alleged error bottomed upon the action of the court in dismissing the counterclaim. For if the trial court was right, as we conclude he was, in the holdings above discussed, it necessarily follows that he was right in dismissing the counterclaim. Having found that appellants had breached this contract by refusing to pay Dickey as and when he was entitled to be paid—and this was scarcely denied by appellant drainage district—and that Dickey had not breached the contract himself in the behalves contended for by appellants, it followed as a mere corollary that the counterclaim ought to have been dismissed.

Having found no error meet for reversal, the case should be affirmed, which is accordingly ordered.