## SAVAGE et al. v. SHIELDS.

(Circuit Court of Appeals, Eighth Circuit. November 3, 1923.)

No. 6290.

1. **Appeal and error ⊜⟩931(1)—Findings of chancellor presumptively correct.**

Where a chancellor has considered conflicting evidence, and has based his findings thereon, such findings are to be deemed presumptively correct, and will not be reversed, save for obvious error of law or a serious mistake of fact.

2. **Specific performance ⊜⟩95—One not compelled to take less than marketable title.**

One who agrees to buy a marketable title to land, good enough to support a conveyance of fee-simple title by warranty deed, cannot be compelled to accept any other title, even when tendered in a trial of an action in equity.

3. **Vendor and purchaser ⊜⟩140—"Abstract of title" means abstract from record.**

An agreement in a contract of sale to furnish an "abstract of title" means an abstract from the record, and if there is no record there can be no abstract; and abstracter's statement touching patent to land is a mere conclusion, where there is no patent of record.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abstract of Title.]

4. **Vendor and purchaser ⊜⟩130(2)—"Marketable title" means title free from reasonable doubt.**

A "marketable title" means a title free from reasonable doubt as to its goodness, and one of such a character as will reasonably assure an ordinarily prudent person freedom from litigation and peaceful enjoyment of the property—(citing Words and Phrases, First and Second Series, "Marketable Title").

5. **Vendor and purchaser ⊜⟩113, 165—Small conveyances out of land contracted to be sold held to defeat specific performance and justify rescission.**

Prior conveyances of 4½ acres in the aggregate out of a plantation consisting of 880 acres of land was a defect rendering title to the 880 acres unmarketable, sufficient to prevent specific performance of contract for sale of the entire acreage and to entitle purchaser to a rescission.

6. **Specific performance ⊜⟩8, 16—Not a matter of right, and denied when grant would be inequitable.**

Specific performance is not a matter of right, but rests in the sound discretion of the court, and will be denied when it would be inequitable to grant it.

7. **Vendor and purchaser ⊜⟩87—No contractual provision held to exist as to retention of payment as damages.**

Where first contract of sale of land provided for retention of cash payment as liquidated damages, but a subsequent contract abrogating the first did not entitle sellers to retain the cash payment as liquidated damages, there was no contractual provision pursuant to which sellers could retain the cash payment as damages.

Morris, District Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit in equity by J. W. Shields against S. O. Savage and others, in which defendants filed counterclaim. Decree for plaintiff, and defendants appeal. Affirmed.

J. Merrick Moore and H. T. Harrison, both of Little Rock, Ark. (Thomas S. Buzbee, of Little Rock, Ark., on the brief), for appellants.

E. B. Taylor, of Clarksdale, Miss. (D. Q. Griffing, of Monticello, Miss., on the brief), for appellee.

Before STONE, Circuit Judge, and MORRIS and FARIS, District Judges.

FARIS, District Judge. Appellee, hereinafter called plaintiff, sued to cancel a contract for the sale of a certain farm, including the crops thereon, and of certain live stock and farming implements, and accounts with tenants, and for the return of earnest money paid. Appellants, hereinafter called defendants, by their counterclaim sought specific performance of this contract of sale. Upon a trial nisi, decree went for plaintiff upon his complaint, and defendants' counterclaim was dismissed. This appeal followed, challenging the correctness of the trial court's action.

While the record is somewhat voluminous, the facts which seem to us to decide it and conclude it fall within a fairly narrow compass. Plaintiff and defendants on September 29, 1919, entered into a contract, bearing date September 23, 1919, by which plaintiff agreed to buy and defendants agreed to sell a certain plantation consisting of 880 acres of land, together with the crops thereon and certain live stock, agricultural implements, and accounts due from tenants, all for the sum of $95,000.

For the alleged reason that a first contract retained no lien on the personal property agreed to be sold, two contracts evidencing the proposed sale were executed. Upon the question of liquidated damages, and other vexing points in the case, and those which seem decisive, the first contract, which was made on September 23, 1919, provided thus:

"The said first party also agrees to furnish an abstract of title to said lands, showing a good, clear, merchantable title to said lands, and it is agreed that in the event a good merchantable title cannot be established, the $5,000 paid by said second party will be returned. But it is also agreed that, after said merchantable title is established, the said second party will forfeit the $5,000 paid, should he not go through with the terms of this contract."

This contract was later expressly abrogated by a subsequent contract, which latter, upon the questions of the title to be shown and conveyed, the time within which evidence thereof should be furnished to plaintiff, and liquidated damages (or, to be exact, the lack thereof), provided thus:

"Upon the acceptance of this proposition, you are to pay us $5,000, receipt of which is hereby acknowledged, and we agree within 15 days to submit to you abstract of title showing marketable title in us, and will tender therewith a warranty deed conveying said lands in fee simple, which deed you will take up within 20 days, pay us an additional sum of $20,000, or execute your note for said $20,000, due and payable on or before January 1, 1920, said note to be secured by such security as is acceptable to us or any bank, and you are to execute notes for the balance of the purchase money as follows: [Then follows description of notes for $63,000, with due dates thereof.]"

Upon this appeal, defendants aver and plaintiff denies: (a) That the title offered was a "marketable" title, sufficient to support a con-

veyance in fee simple, with covenants of warranty, as agreed in the contract; (b) that defendants were not bound, as of the essence of the contract, to furnish proof by an abstract of such a title in them, within 15 days, as the contract upon its face provided, but that, if the abstract showed a bad title, or a title which was not marketable, and not sufficient to support a warranty deed, defendants were entitled to have a reasonable time within which to perfect and tender a marketable title; and (c) that plaintiff waived the furnishing of an abstract in 15 days, the defects, if any, in the title offered to him, and the deficiency alleged by him in the personal property.

[1] Logically, the question of waiver must be first considered. This question was necessarily included in the judgment below, and must have been duly considered by the learned trial court. There was offered touching it, upon the trial, contradictory evidence. We are constrained to find, after a careful reading of this evidence, that the finding of the trial court was in full accordance with the preponderance of this evidence. But, even if it were not, the rule is well settled that:

"Where a chancellor has considered conflicting evidence, and has based his findings thereon, such findings are to be deemed presumptively correct, and these findings will not be reversed, save in the presence of an obvious error of law, or a serious mistake of fact." Roswell Drainage District v. Dickey, 292 Fed. 29, decided by Circuit Court of Appeals of Eighth Circuit August 1, 1923; United States v. Marshall, 210 Fed. 595, 127 C. C. A. 231; Brookheim v. Greenbaum, 225 Fed. 763, 141 C. C. A. 89.

The question most strenuously contested in the briefs and the arguments in the case is whether under the terms of the contract the agreement to furnish an abstract of title to the land which should show a marketable title, sufficient to sustain a warranty deed in fee simple, was so far of the essence of the contract as to warrant plaintiff's refusal to proceed, unless such abstract showing a marketable title was furnished in 15 days after the contract was executed. Plaintiff contends that it was of essence, and that, since it was concededly not furnished in 15 days as agreed, he was not forced to fulfill his agreement to buy. Defendants contend that it was not of the essence, and that they had a reasonable time in which to perfect and proffer title, even if a title in accordance with the contract was not shown, by the abstract furnished, or even if such a title was not possessed by them in 15 days after the execution of the agreement of sale, and (as already discussed and disposed of) that plaintiff had waived this latter point. But we think we need not decide this point, or decide whether, conceding the rule is ordinarily as contended for by defendants, the peculiar facts of the case, and the construction put upon it here by defendants themselves, serve to modify this usual rule.

Upon this and on other points, germane to this case and to our discussion of it, 27 Ruling Case Law, at page 512, says:

"If the agreement is silent as to the time when the abstract is to be furnished, it is the duty of the vendor to furnish it within a reasonable time for examination before the contract is to be consummated. Though ordinarily the vendor may tender an abstract showing a marketable title at any time prior to the rescission by the purchaser of the contract of sale for the vendor's failure in this regard, the time for furnishing it may be made of the essence

293 F.—55

of the contract entitling the purchaser to rescind on the failure of the vendor to perform his agreement in this respect. The object of requiring the vendor to furnish an abstract of title is to enable the purchaser to acquire information as to the state of the title without resort to other means, and therefore the abstract must on its face show a good title."

[2] But whatever may be the usual construction of a clause, like, or similar to, that embodied in the contract before us, the rule ought to be obvious, that one who agrees to buy a marketable title to land, which must be good enough as here to support a conveyance of the fee-simple title by a warranty deed, cannot be compelled, absent waiver as here, to accept any other title, even when tendered in the trial of an action in equity. Such a view is so obviously in consonance with common sense and natural justice as to require neither authority nor exposition.

The contract, as already said, bears date of the 23d day of September, 1919, though the witnesses say it was actually executed September 29th. This action was begun on the 17th day of July, 1920, by plaintiff. The cross-bill of defendants, praying for a decree for specific performance on the part of plaintiff, was filed on the 31st day of August, 1920; yet no very serious steps were had or taken by defendants to perfect a legion of glaring defects in the title to this land until February and May, 1922, the latter date being only 2 months before the actual trial of the case.

Whether defendants had, by the facts in the case and the language used in the contract, only 15 days to furnish an abstract, or whether they had a reasonable time to furnish such abstract, it is yet plain that upon the trial of the case, almost 3 years after the execution of the contract to furnish an abstract within 15 days, they must show in themselves a marketable title, sufficient to support a conveyance of a fee-simple title by a warranty deed. For that was what they agreed to convey; if they did not have such title, they could not compel plaintiff to take the land. They were not entitled to have a decree for specific performance, and plaintiff, after the lapse of almost 3 years, was entitled to cancellation, at least upon the ground that no such title as was agreed to be conveyed was in defendants at the time of the trial, or had ever been tendered by them, or was tendered by them on the trial.

For proof of title in defendants at the trial, an abstract of title, made by certain local abstracters, was relied on. This abstract was filled with conclusions and was inartificial in the extreme. There are dozens of defects in it. Some of these have perhaps been cured by the local statutes of limitations; but, in the absence of any showing of facts on which to bottom this view, it is impossible to so conclude with any certainty.

[3] But, conceding all this, without deciding the point, the title shown on the trial of the case disclosed divers glaring defects, one at least of which is incurable. Among these are:

(a) Four certain warranty deeds, conveying in all 4½ acres of this land to certain churches and a lodge. These deeds, it is true, contained conditions subsequent; but these conditions might never be broken, so

as to produce reverter to the grantor. The contract contained no exception as to them, and no mention of title in these grantees.

(b) One Branch entered 160 acres of this land from the government, he conveyed it to M. L. Butler, the latter never conveyed it, and the decree attempting to quiet title does not mention him. If in fact W. L. Butler was intended, some showing ought to have been made touching the error.

(c) One Morris, in the year 1916, mortgaged part of the land, to wit, 40 acres, to one Thomure. The abstracter concluded that this was an error, and no other showing was made about the matter.

(d) One Murphy conveyed 160 acres of this land by warranty deed to a railroad company in consideration for stock.

(e) A certain conveyance by deed of a sheriff, upon a judicial sale under a special execution of 800 acres of the land, wherein dower rights may have existed for aught that appears, which rights may not yet be barred.

(f) An alleged patent from the United States to the state of Arkansas, for 120 acres of this land, was never recorded, and the abstracter's statement touching the existence of such patent is therefore a mere conclusion. If this parcel was as a matter of fact swamp land, the title passed to the state by the Act of September 28, 1850 (Comp. St. §§ 4958–4960); if it was not in fact swamp land, the title did not pass from the United States. The patent, if it in fact existed, would furnish proof as to the fact of the lands being swamp land, and of their selection as such. An abstract of title means an abstract from the record; if there is no record, it is obvious there can be no abstract.

[4] Was plaintiff, who had contracted for a marketable title, compellable, even in an action in equity, to take such a title? We do not think so. Before any court could order specific performance, it was incumbent on defendants to show a marketable title in them. A marketable title means a title free from reasonable doubt as to its goodness, and one of such a character as will reasonably assure an ordinarily prudent person freedom from litigation and peaceful enjoyment of the property. 5 Words and Phrases (First Series) p. 4388, and cases cited.

[5] It seems clear, both as a matter of law and of fact, that no ordinarily prudent person ought to be compelled to lay out $88,000 in payment for the title tendered in this action. Even if it be conceded, as we think it cannot be, that each and every defect and deficiency shown in this title by the abstract relied on can be, or has been, cured by the statutes of limitations, save and except the conveyances to churches and a lodge set out in paragraph (a) supra, the latter alone is sufficient to prevent a decree for specific performance and to entitle plaintiff to a rescission. The very late case of Schafroth v. Ross, 289 Fed. 703 (decided in this circuit on the 7th day of May, 1923), contains a full and valuable discussion of this point, not only for the enlightening argument in favor of the conclusion here reached, but for what it says against that position. The very limits of the rule against the conclusion here reached are succinctly stated in the Schafroth Case thus:

"We think it sound equity and common sense that, where a contract of conveyance by a fair construction of the whole instrument gives notice of an easement permanent in its nature, such as the right of way of a railroad company, the purchaser takes title subject to such easement, and there can be in equity no right on his part to rescind the contract because of the same. The parties in such case are presumed to have contracted with reference to the easement. This does not in any way violate the fundamental rule prohibiting the varying of written instruments by parol evidence. We are not called upon to decide the question as to the effect of knowledge of an easement arising outside the instrument itself, as that question is not here, and we do not determine it."

[6] Moreover, another consideration may be relied on as an argument making for affirmance: This is that:

"A decree for specific performance is not a matter of right, but rests in the sound discretion of the court. This discretion is not arbitrary or capricious, but judicial, and is controlled by the established doctrines and settled principles of equity. The desired relief will be granted or withheld by the court upon a consideration of all the circumstances of each particular case, and no positive rule can be laid down by which the action of the court can be determined in all cases." 25 R. C. L. 214.

In short, specific performance will not be decreed when its enforcement would be inequitable under the facts shown in evidence. Here plaintiff sued to rescind his contract and to recover back the $5,000 which he had paid; while defendants sued for specific performance. If, under the facts shown, specific performance would be inequitable, the learned trial court was on this consideration alone warranted in refusing to decree it. If it is not to be decreed, then in fairness to both parties it ought to be rescinded. This fairness as to plaintiff is obvious, and the fairness to defendants lies in the fact that, as to those having actual notice of the contract, the latter is a continuing cloud on their title.

[7] The so-called first contract did not provide any time limit within which an abstract should be furnished, but did provide for the retention of the cash payment of $5,000 as liquidated damages; while the second contract, which expressly abrogated the first so-called contract, did provide a time limit of 15 days within which the abstract should be furnished, but made no mention of liquidated damages. In other words, during the time there existed no time limit within which such abstract should be furnished—that is, during the life of the first contract—the right in defendants to retain the cash payment of $5,-000, as liquidated damages, in case plaintiff refused to "go through" with the terms thereof, was expressly retained. But, when the time limit was expressly written into the contract, the retention of the cash payment as liquidated damages was not mentioned. So no contractual provision existed when this suit was tried, pursuant to which defendants may retain this $5,000. If this can be done, it must be done by way of a decree for specific performance, as a part of such decree, and as and for actual damages sustained by defendants.

In passing it may be observed that there was no proof (save the most general conclusions) of the actual amount of damages sustained by defendants on account of the alleged breach by plaintiff, except as to the commission of $2,000, due to the real estate agents. For aught

that appears to the contrary, the land may have increased largely in value between the time of the alleged breach and the trial. Defendants do say they were damaged more than the value of $5,000, but, except as noted, they do not descend to particulars.

Regard being had to the facts that some $40,000 were due when the case was tried; that the crops which plaintiff was to take over had undoubtedly been sold; that the accounts, which were to have been assigned to him, had presumably been paid; that the personal property, which was never worth, by $6,000, what plaintiff was led to believe it worth, and which was to go to him, has surely depreciated in value, by subsequent use by defendants—almost insuperable difficulties would be met in doing equity, by any decree for specific performance which could now be entered, and, if equity cannot be done, such a decree ought not to be entered. If it be said that the fault for this situation lies with plaintiff, the answer is that upon keenly contradictory evidence the trial court must have found this issue for plaintiff, for such finding is necessarily included in the judgment rendered, and the rule of deference for the trial court's finding, heretofore set forth, ought to preclude a reversal.

For either and both of the reasons discussed, the case ought to be affirmed, which is accordingly ordered.

MORRIS, District Judge, dissents.